Larry W. EXLINE, Petitioner–Appellee,

v.

Frank O. GUNTER, Executive Director, Colorado Department of Corrections, Respondent–Appellant.

No. 91–1424.

United States Court of Appeals, Tenth Circuit.

Feb. 3, 1993.

Rehearing Denied March 23, 1993.

John Daniel Dailey, Deputy Atty. Gen., Appellate Section, Denver, CO, (Gale A. Norton, Atty. Gen., Raymond T. Slaughter,

Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., with him on brief), for respondent-appellant.

Andrew C. Heher, Deputy State Public Defender, Denver, CO, (David F. Vela, Colorado State Public Defender, with him on brief), for petitioner-appellee.

Before KELLY, and McWILLIAMS, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

In October, 1986, in the district court of El Paso County, Colorado, Larry Exline was convicted of one count of sexual assault on a child. The Colorado Court of Appeals affirmed his conviction, *People v. Exline*, 775 P.2d 48 (Colo.App.1988), and certiorari was denied by the Supreme Court of Colorado.

One of the issues presented in the state appeal was whether the state trial court erred in denying Exline's motion for discovery of the victim's social services child abuse records. The state appellate court found that Exline had failed to make a sufficient offer of proof for the necessity of those records, and also ruled that the denial of the discovery request did not violate Exline's constitutional right of confrontation.

Exline then filed this federal habeas corpus action seeking relief upon the grounds that his right to due process was violated by the trial court's failure to review *in camera* the social service records of the alleged victim, and that his rights under the due process and confrontation clauses were violated because the prosecution had access to those records, and he did not.[1]

Upon finding that Exline's right to due process had been violated by the state court's failure to review the social service records *in camera*, the federal district court below entered an order holding the

petition for habeas corpus in abeyance and directing the El Paso County District Court "to conduct an *in camera* review of the department of social service's records of the complainant to determine whether the records contain information that may have been necessary to Exline's defense." The state court was also directed to submit a certificate of compliance and remedial measures to be taken, if any, in light of the federal court's order.

The state court returned its certificate of compliance under date of October 10, 1991. Its portent was that while denying Exline's motion to discover the social service reports, it had provided that he could have access "to a juvenile file No. 85JV1677," a dependency and neglect file, in order that he could submit a "particularized statement of need" for the social services file. It appears that this juvenile file was created as a result of an action brought by the department of social services concerning MJ, her sister, their mother, and several other parties, including Exline.

The state court also found that when it examined the social services file, as directed by the federal court, it "identified four documents which it believes may have been necessary to Mr. Exline's defense." The state court declined to take any remedial action because in its view Exline had failed to examine the juvenile file which was made available to him and had failed to make any showing of "particularized need" for the social services file.

After receiving the certificate from the state court, the federal district court below, proceeding under applicable law provided by *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), again returned the matter to the state court, with these directions:

(1) The El Paso County District Court is DIRECTED to conduct an *in camera* review of the Department of Social Service's records of the complainant to de-

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

1. Exline's first federal petition for writ of habeas corpus was denied for failure to exhaust state

remedies because Exline included some unexhausted claims within his complaint. He then refiled his petition, relying solely upon claims raised in his state appeal.

termine whether the records contain information that probably would have changed the outcome of Exline's trial. If the records, including the four documents referred to in the Certificate of Compliance, contain information that probably would have changed the outcome of Exline's trial, Exline must be given a new trial. If the El Paso County District Court finds that the DSS records contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, no further action shall be taken by the district court. Complete findings of fact and conclusions of law shall be entered by the district court.[2]

Under the ruling of the Supreme Court in *Pennsylvania v. Ritchie, supra,* the district court correctly found that Exline had been denied his right to due process because the state trial court had failed to review the social service records *in camera.*

In *Ritchie,* the defendant was charged with assaulting his daughter and prior to trial he sought access to records compiled by a social services agency at the time of another investigation. The agency claimed the records were privileged under state law, although there was an exception to that law whereby the agency could disclose records to a "court of competent jurisdiction pursuant to a court order." Ritchie argued that he was entitled to examine the records "because the files might contain names of favorable witnesses, as well as other exculpatory evidence." The motion to disclose was denied, even though the trial judge had not examined the file himself. There was no indication that the prosecutor had been given access to the agency records or that he was aware of the contents of those records. The Pennsylvania Supreme Court determined that the order denying access had violated both the confrontation clause and the compulsory process class, and that defendant's counsel was entitled to view the files.

On appeal, the Supreme Court found that "the ability to question adverse witnesses ... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony", and that "(a) defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files." 480 U.S. at 53, and at 59, 107 S.Ct. at 999, and at 1002, 94 L.Ed.2d at 54, and at 58. However, the Court further found that the defendant *was* entitled to have a file reviewed "by the trial court *to determine whether it contains information that probably would have changed the outcome of his trial.* If it does, he must be given a new trial. If the records maintained ... contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, the lower court will be free to reinstate the prior conviction." at 58, 107 S.Ct. at 1001–02, 94 L.Ed.2d at 58. (Emphasis supplied).

In the case before us, Exline was charged with two counts of sexual assault on a child by one in a position of trust. Colo.Rev.Stat. § 18–3–405(2)(b) (1986). The counts involved two young daughters of the woman with whom he was living. One of the counts involving the younger daughter was dismissed because she was incompetent to testify because of her age. Her sister, MJ, was ten years old at the time of trial; and the trial court ruled that she was presumed to be competent as a witness.

It appears that prior to the alleged assaults by Exline, MJ had been sexually molested by two other men—several assaults being by a former husband of her mother when she was between the ages of three and six, and another assault on one occasion by a neighbor. At trial, one of the important issues presented to the jury was the credibility of MJ and the possibility that she had confused or fantasized encounters with Exline because of previous assaults by other men.[3]

**2.** The federal district court granted the State's motion for stay of judgment pending appeal.

**3.** MJ was nine years old at the time of the alleged assaults by Exline. There were no eye-witnesses to assaults and the only corroborating physical evidence were "hickeys" three people observed on her chest.

Because of her family situation, it appears that the Colorado Department of Social Services had developed a file on MJ and her family prior to the alleged assault by Exline. Prior to trial, Exline moved the El Paso County District Court for discovery, and for the state court to conduct an *in camera* review, of those social service records.

Colorado Revised Statutes § 19–10–115(1)(a), (2)(a), (f) (1986 Repl.Vol. 8B) provides in pertinent part that:

(1)(a) Except as provided in this section, reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports shall be confidential and shall not be public information.

\* \* \* \* \* \*

(2) Only the following persons or agencies shall be given access to child abuse or neglect records and reports:

\* \* \* \* \* \*

(a) The law enforcement agency, district attorney, or county department investigating a report of known or suspected child abuse or neglect or treating a child or family which is the subject of the report and, in addition to said reports and records, the law enforcement agency, district attorney, or county department shall have access to the state central registry of child protection for information under the name of the child or the suspected perpetrator.

\* \* \* \* \* \*

(f) A court, upon its finding that access to such records may be necessary for determination of an issue before such court, but *such access shall be limited to in camera inspection unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then pending before it....* (Emphasis supplied)

Under Colorado law, when Exline moved for discovery of and an *in camera* view by the court of the social service records as they might pertain to MJ's credibility and

sexual assaults by other individuals, he was required to make an offer of proof that access to the records was "necessary for determination of an issue" in his case. *People v. District Court of Denver,* 743 P.2d 432, 436 (Colo.1987). He made this offer:

Your Honor, I believe that if the children are going to be testifying, then anything in those (Department of Social Services) reports relating to credibility, I think, would be crucial to the defense in this case. Uh, furthermore, I believe that whether or not those records should be disclosed possibly they should be produced to the Court and then let the Court decide, after reviewing the records as to which ones we would be entitled to.

At this time, the prosecutor denied that he had access to the reports and stated that "nobody from the Department of Social Services or anybody connected with the D & N will be testifying in this case. And again, those are confidential records which are not within my control." It appears that two of the expert witnesses for the prosecution made use of those records in preparing for their testimony against Exline.

As noted, the state court denied Exline's motion for review of the records, finding that Exline had failed to show a "particularized need" for them. The trial court also found that the prosecution had no control over the records.

As the district court noted, the Colorado statute which governed Exline's request is similar to the Pennsylvania statute involved in the *Ritchie* case, and we agree that "Exline made an equally strong, if not more specific, offer of proof that the records 'may be necessary' to the determination of his guilt or innocence than did Ritchie." Under these circumstances, the district court properly concluded that Exline's rights under the due process clause were violated by the trial court's failure to review the DDS records *in camera.*

A similar result was reached by this Court in *Hopkinson v. Shillinger,* 866 F.2d 1185, 1220–1221 (10th Cir.1989) where we held that although a defendant could not

point to specific exculpatory information in records he had never seen, he was entitled to an *in camera* inspection of those records under *Ritchie*.

In this appeal, the state contends that Exline's habeas corpus petition should have been dismissed, without possibility of retrial because, if he had exercised "reasonable diligence," he could have obtained the requested information by other means. In this respect the state now claims that Exline had a chance to show a particularized need for the social service records because he had been given access to a "juvenile/dependency neglect file" which contained information from which he could have made his showing of need. This claim was never made by the state in the appeals reviewed in the Colorado appellate courts and the state's position is not supported by any evidence which appears in the transcript concerning proceedings on July 28, 1986, when Exline's motion was denied.[4]

When the federal district court first returned the case to the state court for an *in camera* hearing, the state court was not asked to determine whether it should or should not review the social service record, and it was not asked to re-interpret what had occurred at the time of the original hearing on Exline's motion in 1986.

The state trial court has yet to make the finding required by *Pennsylvania v. Ritchie*—that is "to determine whether the records contain information that probably would have changed the outcome of Exline's trial." If the outcome would not have been changed, or if the nondisclosure was "harmless beyond a reasonable doubt," then no further action need be taken by the state trial court. If appropriate findings to that effect cannot be made, then Exline must be given a new trial.

Appellee's motion to strike appellant's reply brief and the motions of appellee and appellant to supplement the record on appeal are DENIED. The judgment is AFFIRMED.

---

4. In the Transcript of proceedings of July 28, 1986, found in the record on appeal here, there is no discussion of any offer of access to a "juvenile case file" from which Exline could have made a showing of "particularized need". The first mention of any juvenile file appears in the Certificate of Compliance prepared by the state trial judge dated October 10, 1991.

Exline has filed a motion to strike the State's brief raising an argument which is not supported by the record on appeal, and both parties have filed motions to supplement the record

concerning the existence of a "juvenile case file".

Since we have concluded that the district court properly found that Exline's request was sufficient under *Ritchie*, any further discussion of a "particularized need" for information is unnecessary.

In view of our disposition of the matter, the Motion to strike the State's brief, and all Motions to supplement the record on appeal will be denied.